## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DONNA HUFFMAN,

              Plaintiff,

      v.                                    Case No. 2:25-cv-02088-HLT-TJJ

THE STATE OF KANSAS, et al.,

              Defendants.

# Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

On her second attempt, Plaintiff filed with this court an even more disorganized First Amended Complaint[1] (1AC) that is rambling, confused and difficult to follow. The 1AC, mostly a copy/paste of the initial filing, fails to identify attainable relief. Huffman continues to challenge the processes implemented by the Kansas Supreme Court when deciding to suspend her law license, and subsequent actions by the Office of Disciplinary Administrator regarding her suspended license, now in disabled status. Rather than pursue the appeal process afforded to her, she instead requests relief in the form of this District of Kansas Federal Court telling the Kansas Supreme Court how to do their job moving forward. Defendants[2] request dismissal of all claims under Fed. R. Civ. P. 8, 12(b)(1), 12(b)(5) and 12(b)(6), with prejudice for those same reasons

---

[1] In addition to the content's confusion, page numbers are inaccurate, footnotes are incorrectly placed, and footnote seven is missing entirely.

[2] Although unclear who the 1AC includes as a defendant under the vague caption "et al.," undersigned counsel assumes for the purposes of this motion that all initial parties are included and files this motion on behalf of the State of Kansas; Gayle Larkin, Kansas Disciplinary Administrator; Stanton Hazlett, former Kansas Disciplinary Administrator; Matthew Boddington, former Kansas Department for Children and Families; Robert Hecht, former Disciplinary Administrator Investigator; Office of Judicial Administration; the Supreme Court of the State of Kansas; Chief Justice Marla Luckert; the Kansas Office of the Disciplinary Administrator; the Kansas Board for Discipline of Attorneys; the Department for Children and Families, and the Kansas Office of Administrative Hearings.

identified in Defendant's (initial) Motion to Dismiss and Brief in Support [Doc. 15].[3]

Plaintiff begins in 2005 with allegations of child abuse against her ex-husband, Christopher Huffman, investigated by Defendant Boddington and DCF (then "SRS" (Kansas Department of Social and Rehabilitation Services)). Plaintiff incorporates unsuccessful claims she filed acting as an attorney against mortgage lenders between 2010 and 2014.[4] All claims were dismissed and Rule 11 sanctions were imposed against Plaintiff. Additionally, Plaintiff references and disputes the investigation into her character and fitness review for purposes of sitting for the 2007 bar exam, as well as disciplinary action taken against her in 2022. The named defendants are current and former state employees and state agencies that had some level of participation in the above.

To aid the Court, attached hereto is Plaintiff's First Amended Complaint with the new substantive additions in red. Exhibit 03. In sum, the following changes are noted:

- The first page adds stale vague accusations against Boddington and Hazlett, noting they "hatched another plan" to come after her by "fabricating evidence" and "inviting others to participate" in the custody dispute beginning in 2005.
- Plaintiff adds a claim for injunctive relief while continuing to seek "pecuniary, statutory, and punitive damages in excess of $75,000, which includes up to $20,000 per act" in the prayer. Exhibit 03, p. 38. Plaintiff includes a full page of suggested prospective relief ideas for this Court to implement. *Id*., ¶8.
- Plaintiff claims her disability a "traumatic brain injury resulting in part in executive function issues Currently a licensed attorney on disabled status." *Id*., ¶ 1.
- Plaintiff incorrectly claims "Each Defendant was served with personal capacity summonses to the residences of the individual Defendants." *Id*. ¶4.
- At one point Plaintiff suggests she does not seek reversal of any state judgment, nor does she seek reinstatement of her license to practice law. *Id*., ¶5.
- The 1AC inaccurately concludes the State waives sovereign immunity "under the spending clause accepting federal funds." *Id*., ¶6.
- To the best of their ability, Defendants interpret ¶7 to state Plaintiff's license to practice law is property adopted by the federal courts and this provides jurisdiction over her concerns. *Id*., ¶ 7.
- New ¶¶10, 11, and 85iv provide details regarding her concerns related to the child custody dispute, originating in 2005.

---

[3] The Motion to Dismiss the First Amended Complaint is largely duplicative of the initial Motion to Dismiss.

[4] The 62 pages of exhibits attached to the 1AC appear to be related to this matter.

- Paragraphs 94 through 101 assert claims against Defendant Gail Larkin, specific to her participation in the ODA's suspension of Plaintiff's law license and subsequent change to disability status.
- Paragraph 103 adds language concerning Plaintiff's ADA claim of failure to accommodate during her disciplinary proceedings.
- Paragraph 44 clarifies that the due process violation is substantive (not procedural).
- Paragraphs 39 and 45 add vague examples of stale action taken by defendants. (¶ 39: Boddington creating "false evidence" her during the character and fitness review prior to 2010; ¶ 45: Larin drafted a rule).
- Paragraph 92 makes a legal argument asserting that Plaintiff's law license, public records, and other services constitute "property," which she "sought or acquired" for "personal, family, and business use."
- Paragraph 93 suggests a legal conclusion that the State is a supplier under the Kansas Consumer Protection Act.

## Statement of Facts

The Court is well positioned to recognize those well pleaded facts found in the 1AC. Defendants reserve the right to dispute the same should any count survive dismissal. Defendants request the Court take judicial notice of the following: On May 27, 2022, Huffman's license was suspended for two years, with possibility of probation after 90 days upon approval of a practice supervision plan, due to violations of the professional conduct rule prohibiting lawyers from bringing frivolous proceedings. *In re Huffman*, 315 Kan. 641, 509 P.3d 1253 (2022). Plaintiff's law license has since been placed on disabled status.[5] All Summons issued by the Court in this matter were addressed to: "The Office of Attorney General, 120 SW 10th Ave #2, Topeka, KS 66612". See Exhibit 01, OAG Summons. Defendant Gayle Larkin received a copy of the Complaint via U.S. mail on May 5, 2025. Exhibit 02, Larkin envelope. No certificates of service have been filed to date.

## Standards of Review

Defendants move to dismiss Huffman's claims pursuant to Rule 12(b)(1), (5), and (6). Under Rule 12(b)(5), a defendant may move to dismiss for insufficient service of process. *Wanjiku*

---

[5] See https://directory-kard.kscourts.gov/Home/Details?regNum=23324, visited Aug. 15, 2025.

*v. Johnson Cnty.*, 173 F. Supp. 3d 1217, 1223 (D. Kan. 2016) (citing Fed. R. Civ. P. 12(b)(5)). Before a court can exercise personal jurisdiction over a defendant, the plaintiff must have served process validly under Federal Rule of Civil Procedure 4. *Id.* Plaintiff bears the burden to prove valid service. *Oltremari*, 871 F. Supp. at 1349; *see also Davenport v. Wal-Mart Stores, Inc.*, No. 14-CV-2124-JAR-JPO, 2014 WL 3361729, at *2 (D. Kan. July 9, 2014) (explaining that under Rule 12(b)(5) "plaintiff has the burden of proving the validity of service of process"); *Fisher v. Lynch*, 531 F.Supp.2d 1253, 1260 (D. Kan.2008) ("In opposing a motion to dismiss for insufficient service of process, plaintiff bears the burden to make a prima facie case that (s)he has satisfied statutory and due process requirements so as to permit the Court to exercise personal jurisdiction over defendants.").

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), or a facial challenge to subject matter jurisdiction under 12(b)(1), the Court assumes as true all well-pleaded factual allegations and views them in the light most favorable to the non-moving party. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011); *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). However, a court is not obligated to accept as true allegations that state only legal conclusions. *Hall v. Bellmon,* 935 F. 2d 1106, 1110 (10th Cir. 1991). Further, a pleading which offers naked assertions devoid of further factual enhancement will not stand. *Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiff must detail enough factual substance to support entitlement to relief. The allegations must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 570 (2007). A complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Merryfield v. Jordan*, 431 Fed. Appx. 743, 745 (10th Cir. 2011)

(internal citations omitted). While the Court usually views the facts alleged in the complaint as true, the court need not accept allegations that are devoid of underlying facts. *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (internal citations omitted). And the court may consider documents in addition to the complaint when they are incorporated by reference in the complaint, and for matters of which a court may take judicial notice. *Id.*

I.   **Plaintiff's 1AC fails to cure the insufficient service of process against the individual defendants, requiring dismissal.**

Service of process under Rule 4 "provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." *Oklahoma Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) (citations omitted). Rule 4(e) provides for various methods of service, including those permitted under state law. K.S.A. 60-303 provides methods available in Kansas. If a plaintiff uses the mail to issue summons, the mailing "must be evidenced by a certificate filed with the clerk." K.S.A. 60-303(c)(5).

Here, Huffman served the initial Complaint on all defendants by issuing summons to the state attorney general's office. See Exhibit 01, OAG summons. This is not a proper address for any of the individual defendants, absent a showing that an attempt was made at their place of residence. K.S.A. 60-304(a); *see also Fisher v. DeCarvalho*, 298 Kan. 482, 489, 314 P.3d 214 (2013) (Service must be first attempted at residence before service was proper at business address). Assuming Stan Hazlett, Matthew Boddington, and Robert Hecht are included as defendants, they are no longer state employees so no state agency is a proper business address. As to defendant Luckert, there is no indication Huffman first attempted service at her residence, as required by K.S.A. 60-304(a). See *Fisher*, 298 Kan. at 489. And no attempts to cure these defects have been made between the first motion to dismiss (Doc. 15) and the filing date of this motion.

The only named defendant arguably properly served is Larkin, but Huffman still has not filed a return of service, as required by K.S.A. 60-303(c)(5). Service of process is insufficient so that personal jurisdiction has not been established over any of the individually named defendants. *See Oklahoma Radio,* 969 F.2d at 943 (without proper service, the Court lacks personal jurisdiction over a defendant). Huffman's assertion in the 1AC that "Each Defendant was served with personal capacity summonses to the residences of the individual Defendants" is untrue and does not have to be accepted as true, even at this stage. See *Iqbal*, 556 U.S. 662, 679 (2009) (A pleading which offers naked assertions devoid of further factual enhancement will not stand). Even as a pro se plaintiff, she is required to "follow the same rules of procedure that govern other litigants." *See Lasky v. Lansford*, 76 Fed. Appx. 240, 241 (10th Cir. 2003) (citation omitted). She failed.

## II.    Plaintiff's 1AC does not cure the deficiencies for failure to comply with Rule 8(a)(1) and 8(a)(2) and for that reason should be dismissed.

Rule 8(a)(1) requires Huffman file a pleading that contains a "short and plain statement of the grounds for the court's jurisdiction." Huffman's 1AC fails to do so.

Rule 8(a)(2) requires a "short and plain statement of the claim showing that" Huffman, "is entitled to relief." The 1AC is neither short nor plain. According to the Tenth Circuit "this requirement is designed to force plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Baker v. City of Loveland*, 686 Fed. Appx. 619, 620 (10th Cir. 2017) (citations omitted). The 1AC, longer than the initial Complaint, remains "complicated, confusing, and contains excessive references to seemingly irrelevant matters," with a timeline "nearly impossible to construct." *Givens v. Wichita*, 2024 WL 1198503, at *7 (D.Kan. 2024). "[I]t is not the job of the Court or the opposing parties to sort through a pleading to try and construct plaintiff's claims." *Id*., *see also Baker v. Loveland*, 686 Fed. Appx. 619, 620-21 (10th Cir. 2017) (noting complaint was "filled with unnecessary legal arguments and detail" and

"lack[ed] clarity about what each defendant allegedly did to incur liability"); *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (noting that the claim "goes on for 463 paragraphs spanning 83 pages, and yet it neither identifies a concrete legal theory nor targets a particular defendant").

When multiple government entities and actors are involved, fair notice under Rule 8(a)(2), makes it "particularly important" for the pleading to "make clear exactly who is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). The burden rests on a plaintiff to provide fair notice of the grounds for the claims made against each of the defendants. Nowhere in the 149 paragraphs is Defendant Chief Justice Luckert named. The mentions of Defendants Hazlett, Boddington, and Hecht all refer to incidents occurring (at least) fifteen years ago. Huffman's suspension in 2022 was due to her incompetent representation, unrelated to her child custody battle, and did not involve Boddington, Hecht, or Hazlett.[6] All allegations against Larkin relate to Huffman's disciplinary proceeding, exclusively determined by the State. The 1AC contains identical convoluted narrative and continues to fail to explain how specific defendants caused her alleged harms. The 1AC fails the pleading requirements of Rule 8, and should be dismissed.

## III.    Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.

Regardless of the claimed relief, The *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction, making dismissal proper under Rule 12(b)(1). Federal courts are courts of limited jurisdiction. They "possess only that power authorized by Constitution and statute." *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting

---

[6] Stan Hazlett retired from the ODA in 2021. https://kscourts.gov/Newsroom/News-Releases/News/2021-News-Releases/July-2021/Stan-Hazlett-to-retire-after-34-years-with-attorne, last accessed June 20, 2025.

jurisdiction." *Id*. (citation omitted).

*Rooker–Feldman* prevents lower federal courts from exercising jurisdiction over cases brought by "state-court losers" challenging "state-court judgments rendered before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (internal citation omitted). The doctrine applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Id*. at 466. This preclusion applies to "claims actually decided by a state court, and claims inextricably intertwined with a prior state-court judgment." *Kline*, 861 F.3d at 1180.

The crux of Huffman's filing, including the new language added to the 1AC[7], challenges the reasons and procedures used when she was initially denied the ability to sit for the state bar and later when her license was suspended. If she intended to appeal or challenge her suspension, she was required to comply with the state's rules for doing so. S.C.R. 228(k) provides, "No later than 21 days after the filing of an order or opinion of the Supreme Court imposing discipline, the respondent may file a motion for rehearing or a motion for modification … ." There is no record of any such appeal or motion.

This scenario is one of the reasons for the *Rooker-Feldman* doctrine. In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) two law students asked the lower federal court to exempt them from the requirement they graduate from an accredited law school before siting for the bar exam. The Court stated:

> United States District Courts ... have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case. They do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those

---

[7] Doc. 23 at pp. 2-3, explaining relief sought, specifically damages and prospective injunctive relief.

challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court.

*Id.* at 486. The Supreme Court explained,

> Orders of a state court relating to the admission, *discipline*, and *disbarment* of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court, and not by means of an original action in a lower federal court. The rule serves substantial policy interests arising from the historic relationship between state judicial systems and the members of their respective bars, and between the state and federal judicial systems.

*Id.* at 482 n.; see also *Kline v. Biles*, 861 F.3d 1177 (emphasis added in *Kline*) (internal quotation omitted). The 1AC claims Huffman does not seek to reverse a state judgment or seek reinstatement. Doc. 23, ¶ 5. But her claims still challenge the ODA's process. She remains prohibited from seeking relief for those claims in this court. As recently as 2021 the Tenth Circuit reiterated:

> We have upheld the dismissal under *Rooker-Feldman* of a disciplined attorney's constitutional claims seeking declaratory and injunctive relief against the state supreme court and disciplinary administrator. (internal citation omitted) As the Seventh Circuit observed, "the *Rooker-Feldman* doctrine eliminates most avenues of attack on attorney discipline." *Johnson v. Sup. Ct. of Ill.*, 165 F.3d 1140, 1141 (7th Cir. 1999). That includes challenges to the process leading to the disciplinary decision. . . Thus, the exclusive avenue for federal-court review of a state disciplinary decision is a petition to the United States Supreme Court. *See id.*; *see also* 28 U.S.C. § 1257(a) (providing that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari").

*Ziankovich v. Members of Colorado Supreme Ct.*, No. 20-1314, 2021 WL 4047000, at *3 (10th Cir. Aug. 10, 2021). As such, dismissal is appropriate under Rule 12(b)(1).

## IV. Plaintiff's claims are barred by the *Younger* abstention doctrine.

Huffman's request for injunctive relief (Doc. 23, pg. 1, ¶¶ 8, 145 and prayer for relief, p. 38) requires dismissal pursuant to the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971); *see also Lyman v. San Juan Cnty.*, 588 Fed. Appx. 764, 768 (10th Cir. 2014) ("state attorney-discipline proceedings are within *Younger*'s scope"). As the *Lyman* Court explained:

Based on Congress's "desire to permit state courts to try state cases free from

interference by federal courts," *Younger* abstention is warranted when (1) there are "ongoing state criminal, civil, or administrative proceedings"; (2) the state court "offer[s] an adequate forum to hear the federal plaintiff's claims from the federal lawsuit"; and (3) the state proceeding concerns "important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies," Abstention under *Younger* is mandatory once these requirements have been met.

*Id*. at 768 (internal citations omitted). This case meets the criteria requiring dismissal: Plaintiff's administrative proceeding remains ongoing, the state court provided an adequate forum for her to challenge the decision, and the issue of attorney discipline concerns an important state interest. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 438 (1982) (Brennan, J., concurring) ("State disciplinary proceedings call for "exceptional deference by the federal courts."); see also, *Landrith v. Hazlett*, 170 Fed. Appx. 29, 31 (10th Cir. 2006) ("Federal court should not interfere with state court proceedings by granting relief—such as injunctions of important state proceedings."). *Younger* provides an additional reason for dismissal.

## V.    Huffman's claims are precluded by various immunities and should be dismissed.

### A.    Eleventh Amendment Immunity.

The Eleventh Amendment prohibits federal courts from entertaining suits against States brought by their own citizens or citizens of another State without the State's consent. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). State agencies and State officials likewise enjoy immunity as "an arm of the state." *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 280-81 (1977). Sovereign immunity is jurisdictional and must be resolved by the court. *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 962, 26 P.3d 1246 (2001). "[T]he state is amenable to suit only in the event and for the purpose it has granted the right to be sued[.]" *Carter v. State Dep't of Soc. Welfare*, 184 Kan. 825, 828, 339 P.2d 5 (1959). Kansas has not waived its immunity and does not grant Huffman the right to sue it or its agencies.

Huffman's legal conclusion that the State "has waived its immunity under the spending

clause accepting federal funds" is incorrect. Doc. 23, ¶ 6; *see also Hall*, 935 F. 2d at 110 (a court is not obligated to accept as true allegations that state only legal conclusions). Presumably, Huffman's federal claims are brought under 42 U.S.C. § 1983. Congress did not abrogate the immunity under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). A recent Tenth Circuit case involving a suspended attorney's license affirmed the district court's dismissal, finding no exception to the application of Eleventh Amendment immunity against the state's entities ordering suspension: In *Marshall v. Bacon*, No. 24-2076, 2025 WL 369436, at *3 (10th Cir. Feb. 3, 2025), the court found the doctrine "did not permit [plaintiff's] attempt to collaterally attack the Board's proceedings." *Id.* This decision recognized that an exception under *Ex parte Young*, 209 U.S. 123 (1908) does not lie under these facts. Further, Huffman's claims do not meet the necessary requirements for an exception. *See Ex parte Young*, 209 at 128. She fails to plead she is (i) suing only state officials, not the state; (ii) alleging non-frivolous violations of federal law; (iii) seeking only equitable relief rather than retroactive monetary relief from the state treasury; and (iv) her suit does not implicate special sovereignty interests. *Id*. In contrast, the 1AC includes the state, makes frivolous claims, and requests "judgment for pecuniary, statutory, and punitive damages in excess of $75,000.00 which includes up to $20,000 per act for each act and practice, expenses" in addition to "any injunctive relief." Doc. 29, p. 38.

Further, Plaintiff's claims implicate a special sovereignty interest, specifically the exclusive authority the State of Kansas possesses in regulating attorney disciplinary proceedings. The Kansas Constitution, Kansas Supreme Court Rules, and Kansas Rules of Professional conduct provide exclusive jurisdiction of disciplinary proceedings to the Kansas Supreme Court. *See e.g.*, *Matter of Morton*, 317 Kan. 724, 737–38, 538 P.3d 1073 (2023) ("Article 3, § 1 of the Kansas

Constitution vests the Kansas Supreme Court with authority to administer the judicial department of Kansas government ...includ[ing] maintaining high standards for the practice of law and disciplining those who fail to meet such standards."). The U.S. Supreme Court limited the *Ex parte Young* doctrine, holding that the Eleventh Amendment protections may include prospective injunctive relief "when such relief would be as much of an intrusion on state sovereignty as an award of money damages."—exactly the type of relief sought by the laundry list in the 1AC. Doc. 29, ¶8. *See Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261 (1997).

Huffman's federal claims against the state, its entities, and its employees in their official capacity should be dismissed. A presumption that any state that accepts any federal funds waives all immunity would result in the abolition of the Eleventh Amendment to the U.S. Constitution.

### B.    Individual defendants in their personal capacity are entitled to qualified immunity.

Defendants Larkin, Hazlett, Boddington, and Hecht are named in their personal capacity. To the extent Huffman's claims survive, these defendants are entitled to qualified immunity. Qualified immunity is immunity from suit rather than a mere defense to liability. *Callahan v. Unified Gov't of Wyandotte Cnty.*, 806 F.3d 1022, 1026 (10th Cir. 2015). (*citing Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010)). Once an official has raised the defense of qualified immunity, the plaintiff bears the burden to show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the conduct at issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "Unless the plaintiff provides specific, non-conclusory allegations of fact sufficient to establish these elements, the official is entitled to qualified immunity." *Youngblood v. Qualls*, 308 F. Supp. 3d 1184, 1195 (D. Kan. 2018).

Huffman's IAC fails to identify a "clearly established statutory or constitutional right" any named defendant violated. Huffman's few allegations of constitutional violations are too vague to

put them on notice. *See* Doc. 25, ¶ 2, 11, 18, 19, 22, 41, 118, 136. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007). A basic level of specificity is necessary to "permit[ ] the defendant[s] sufficient notice to begin preparing [their] defense and the court sufficient clarity to adjudicate the merits." *Id.* Because Huffman fails to identify what "clearly established statutory or constitutional right" any named defendant violated, their actions are entitled to qualified immunity.

## VI.    Huffman fails to state a claim under federal law.

### A.    Huffman fails to state a claim under the First Amendment.

A First Amendment retaliation claim requires plaintiff to show (a) she was engaged in constitutionally protected activity; (b) the defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendants' adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Van Deelen v. Johnson*, 497 F.3d 1151, 1155–56 (10th Cir. 2007). The 1AC fails to identify what activity was protected by the First Amendment. Construing the pleading liberally[8], it may be Huffman's challenges to adverse rulings against her, such as the SRS/DCF's decision regarding her daughter in the early 2000s (although the 1AC expressly denies challenging these actions. Doc. 23, ¶ 5). Although all facts must be assumed as true at the motion to dismiss stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As discussed

---

[8] When a plaintiff proceeds pro se, the court construes filings liberally and holds them to "a less stringent standard than formal pleadings drafted by lawyers," but does not become an advocate for the plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

in a similar case,

> Plaintiff violated numerous ethical rules. Hence, Plaintiff's allegation that the State Disciplinary Proceeding Defendants pursuit of disciplinary charges against him was "substantially motivated" by his exercise of his First Amendment rights is completely implausible. … Additionally, because there is simply no way Plaintiff can re-plead this allegations [sic] to state a plausible claim for relief against any of these Defendants, this dismissal is with prejudice. *See Staats v. Cobb,* 455 Fed. Appx. 816, 818 (10th Cir. 2011).

*Hawver v. Nuss*, No. 5:14-CV-04084-DGK, 2015 WL 1034375, at *4 (D. Kan. Mar. 10, 2015). The same is true here. Huffman speculates is a vague, conclusory, and factually unsupported connection that the agencies "all conspired together." Doc. 23, ¶ 37, 39.

Generally speaking, "plaintiffs must show (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Galindo v. Taylor*, 723 F. Supp. 3d 1008, 1030 (D. Kan. 2024) (internal citations omitted). "[C]ivil conspiracy requires a meeting of the minds or agreement among the defendants and concerted action." *Id*. A plaintiff must plead specific facts to suggest agreement and concerted action between the alleged conspirators; conclusory statements are insufficient. *Phelps v. Wichita Eagle–Beacon,* 886 F.2d 1262, 1272 (10th Cir. 1989). Huffman does not allege facts to suggest how "ODA, SRS, Hecht, Boddington, and Hazlett all conspired together." Doc. 23, ¶ 39. Many of the named defendants, including Hazlett, Boddington, Hecht, are no longer State employees.[9] "The bare assertion that certain officials 'conspired' is exactly the kind of conclusory statement [the court shouldn't] consider when assessing a motion to dismiss." *Id*., *Gowadia v. Stearns*, 596 Fed. Appx. 667, 671 (10th Cir. 2014). "Courts are in no way obligated to tolerate arguments that thoroughly defy common sense." *Charczuk v. Commissioner,* 771 F.2d

---

[9] Additionally, a conspiracy claim is time barred. The inclusion of Hazlett indicates the event occurred prior to June, 2021. Inferences to the Kansas Supreme Court's decision implicate events on or before May 27, 2022, the date the Opinion was filed. The statute of limitations to bring a claim is two years. K.S.A. 60-513(a)(4).

471, 475 (10th Cir. 1985). Huffman fails to adequately plead facts to provide a road to relief under the First Amendment.

### B.  Huffman fails to state a claim under the Fourteenth Amendment.

The 1AC contains several blurred instances where the state's disciplinary process allegedly violated Huffman's procedural due process protections. Doc. 23, ¶¶ 42-82. However, it also specifies the Fourteenth Amendment violation is a denial of substantive due process. Doc. 29, ¶34, 44. Taking the IAC on its face, defendants restrict their analysis to substantive due process.

Substantive due process "guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision." *Archuleta v. Colorado Dep't of Insts., Div. of Youth Servs.,* 936 F.2d 483, 490 (10th Cir. 1991). There are two strands of the substantive due process doctrine. "One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (citing *Chavez,* 538 U.S. at 787 (1994) (Stevens, J., concurring in part and dissenting in part).

It is unclear which of these Plaintiff asserts. Paragraph 44 broadly claims the "ODA, OAH, SRS, and the Kansas Judicial Branch (i.e. the Kansas Supreme Court) have all violated Plaintiff's "due process rights resulting in damages including but not limited to taking of property and liberty." The 1AC fails to plead which "fundamental right" Plaintiff believes is being violated by defendants. The 1AC discusses Plaintiff's right to parent, but it can be reasonably assumed her daughter is no longer underage. Although Plaintiff believes her law license, records, and "services" to be property, (¶92), her claims are insufficient. "A property interest includes a 'legitimate claim of entitlement' to some benefit created and defined by 'existing rules or understandings that stem from an independent source such as state law.' " *Tufaro v. Oklahoma ex rel. Bd. of Regents of*

*Univ. of Oklahoma*, 107 F.4th 1121, 1135–36 (10th Cir. 2024) (internal citation omitted). The "existing rules" justified her suspension, which she does not dispute, prior to her voluntary transfer to disabled status.

The 1AC also fails to assert alleged conduct that would rise to "shock the conscience." "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). Her claims that the disciplinary process favors the State provides only instances clearly outside the permitted time to bring a claim. *See Johnson v. Cherokee Cnty. Bd. of Cnty. Comm'rs*, 2020 WL 1320720 (D. Kan. 2020) (holding a plaintiff has two years to bring a due process claim under § 1983). Finally, Plaintiff presumably brings this claim under § 1983 and for reasons argued above, it cannot survive.

**C.**      **Huffman fails to state an Equal Protection claim.**

For many of the same reasons, Huffman's claims of equal protection violations listed in Doc. 23, ¶¶ 83-90 and 146-48, do not survive dismissal: the allegations are vague and time barred. Moreover, she does not specify any "arguably indistinguishable" persons who are in a similar position to her and are being treated differently by the Defendants, or the processes she complains about. *See State v. LaPointe*, 309 Kan. 299, 316, 434 P.3d 850 (2019). The purpose of the Equal Protection Clause is to ensure similarly situated individuals are treated alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). However, this is only applicable to "individuals who are truly similarly situated in light of the governmental provision at issue." *State v. Colley*, 553 P.3d 983 (Kan. Ct. App. 2024). Here, Huffman does not identify any colleague who, after committing the same conduct reprimanded by the Kansas Supreme Court in the disciplinary order, was treated differently. This claim fails.

### D.    Huffman fails to state a claim under the ADA.

Scattered throughout the document are assertions that Defendants violated the ADA. Doc 23, fn 26, ¶¶ 103, 107, 115 and 141. Title II of the ADA prohibits discrimination against qualified individuals with disability in public programs and activities. 42 U.S.C.A. § 12132. To state a claim under Title II, Huffman must allege that (1) she is a qualified individual with a disability, (2) she was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits or discrimination was by reason of a disability. *See Cohon ex rel. Bass v. N.M. Dep't of Health,* 646 F.3d 717, 725 (10th Cir. 2011); *see also*, 42 U.S.C. § 12132. The 1AC does clarify Plaintiff claimed disability: a traumatic brain injury. Doc. 29, ¶ 1. But it does not claim to meet the definitions required for protection. More importantly, the 1AC does not plead what benefits Plaintiff was denied by reason of such disability. She does not suggest what accommodation she sought, or assert it was reasonable. As such Huffman fails to state a claim for relief under the ADA.

### E.    Count Four's reprise of Equal Protection or access to justice claim fails.

Count Four includes an additional federal claim, accusing the Kansas Supreme Court of creating barriers preventing pro se parties equal access to the courts. Doc. 23, ¶¶ 146-48. Yet nothing in the 1AC suggests that Huffman has been prevented from filing a petition for relief in either federal or state court due to these alleged inequities. Viewing the facts in the light most favorable to Huffman, she has not been deprived access to the courts.

## VII.    Huffman fails to state a claim under state law.[10]

Plaintiff asserts claims of (a) negligence, negligence per se, negligent or intentional

---

[10] Included in the 1AC's "Background facts," Plaintiff includes allegations related to the public speech protection act, also known as the anti-SLAPP statute, K.S.A. 60-5320. Doc. 29, ¶¶ 26-35. The invocation of this statute perplexing and inappropriate. The statute's purpose is to "provide[] a procedural remedy early in the litigation for those parties claiming to be harassed by a SLAPP lawsuit." *Doe v. Kansas State University*, 61 Kan. App. 2d 128, 135, 499 P.3d 1136 (2021). "[T]he stated purpose of the Act is to protect individuals *against* civil litigation who are merely exercising

misrepresentation, constructive fraud, and fraud by silence, Doc. 23, ¶¶ 120-24; (b) outrage, *id*. ¶¶ 125-30; and (c) malicious prosecution, *id*. ¶¶ 131-45. She also includes a separate count to assert violations of the Kansas Consumer Protection Act. *Id*., ¶¶ 91-104. All state law claims must be dismissed for failure to state a claim.[11] Additionally, this Court does not have jurisdiction over these claims, as they are barred by Eleventh Amendment immunity, and absolute/judicial immunity under S.C.R. 238.

### A.    The KCPA does not apply.

Huffman's attempt to apply the Kansas Consumer Protection Act ("KCPA") fails. As an initial matter, the claims must be dismissed for failure to plead with particularity as required by K.S.A. 60-239(b). See *Huffman v. Stormont Vail Healthcare, Inc*., 2022 WL 188563 (Kan.App. 2022); *Thompson v. Jiffy Lube Intern., Inc*, 505 F. Supp. 2d 907, 932 (D. Kan. 2007). Huffman's allegations here are of the general nature rejected by state and federal courts.

Further, a prima facie case (in part) requires Huffman to show she is a consumer, the Defendants are suppliers, and they engaged in a consumer transaction. "The KCPA's protection is limited to parties who actually contract with suppliers for goods or services." *Wright v. Enhanced Recovery Co., LLC*, 227 F. Supp. 3d 1207, 1211 (D. Kan. 2016) (citing *CIT Grp./Sales Fin., Inc. v. E–Z Pay Used Cars, Inc.*, 29 Kan.App.2d 676, 685, 32 P.3d 1197 (2001)). Plaintiff's incorrect legal conclusions that a consumer/supplier relationship exists may be disregarded. Doc. 23, ¶¶91-104; *see also Hall*, 935 F. 2d at 110 (a court is not obligated to accept as true allegations that state only legal conclusions). The Defendants are not suppliers[12], attempting to sell Huffman the ability

---

their constitutional rights to free speech and the right to petition." *Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1063 (D. Kan. 2018) (emphasis added). Any claims stemming from these "facts" are meritless.

[11] Further, Plaintiff failed to comply or plead compliance with K.S.A. 12-105b, required prior to commencing a suit, and for that reason alone the tort claims fail.

[12] "Supplier" is defined as "a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces *consumer transactions*, whether or not dealing directly

to practice law. A state entity performing its legal duties does not meet the KCPA's definition of "consumer transaction." *Ellibee v. Aramark Corr. Servs., Inc.*, 37 Kan. App. 2d 430, 433, 154 P.3d 39 (2007) ("There is no evidence of any sale or trade, as the DOC is legally required to provide sustenance for all inmates.").

Huffman's application to be a licensed attorney in Kansas, and its subsequent suspension, is not a consumer transaction entitled to protection under the KCPA. Further, Larkin individually does not meet the definition of a "supplier," and her alleged actions were not part of a "transaction," therefore, they do not fall under the purview of the KCPA. Huffman has failed to state a claim under the KCPA and dismissal is warranted.

**B.      Kansas Tort Claims Act, generally.**

A tort claim against a government or its employees is limited by the parameters of the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 to 75-6120. Though sovereign immunity derives in part from the common-law tradition, it also exists by constitutional design. *Alden v. Maine*, 527 U.S. 706 (1999). Absent consent, waiver, or a valid abrogation of immunity by Congress, sovereign immunity precludes claims for damages. *Id.*, at 755–56. The KTCA is a limited waiver of the sovereign immunity retained by government entities in Kansas. For instance, K.S.A. 75-6116(g) provides there is no "waiver by the state of Kansas of immunity from suit under the 11th amendment to the constitution of the United States." Further, the "KTCA creates no new cause of action beyond what is already available under Kansas law, and there can be no greater liability under the KTCA than a private person would have under Kansas law." *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 34, 20 P.3d 39, 62 (2001).

---

with the consumer." K.S.A. 50-624(l) (emphasis added). A "consumer transaction" is "a sale, lease, assignment or other disposition for value of property or services within this state, … , to a consumer; or a solicitation by a supplier with respect to any of these dispositions." K.S.A. 50-624(c). The activity here fails to meet these definitions.

Several exceptions modify the general rule of liability under K.S.A. 75-6103(a), including: (1) judicial functions, K.S.A. 75-6104(a)(2); (2) the enforcement of or failure to enforce a law, rule or regulation, K.S.A. 75-6104(a)(3); (3) the adoption or enforcement of, or failure to adopt or enforce, any written personnel policy, K.S.A. 75-6104(a)(4); (4) the discretionary function exception, K.S.A. 75-6104(a)(5); and (5) adoptive immunity, K.S.A. 75-6104(a)(9). A court should first examine whether plaintiff has a prima facie claim for negligence before resorting to the KTCA for exceptions to liability. *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 585, 214 P.3d 1173 (2009). The elements of a prima facie claim of negligence are as follows:

> [T]o establish liability for negligence against a defendant, including a governmental agency, the plaintiff must establish: (1) The defendant owed a duty to the plaintiff; (2) the duty was breached; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff sustained damages.

289 Kan. at 585-86 (citations omitted). "Whether a duty exists is a question of law." *Id.,* at 586. *Accord Beshears v. U.S.D. 305*, 261 Kan. 555, 559, 930 P.2d 1376 (1997). Here, there is no duty. *See* § 6.B.4, *infra*. Also, it is incumbent to first identify the person or persons who owed a duty to the plaintiff and then determine if the injuries claimed by plaintiff were caused by a breach of the duty owed by that/those person(s). Huffman's 1AC contains no such assertion.

**C.    The KTCA did not waive immunity for the State of Kansas or its agencies.**

The Eleventh Amendment applies to state tort claims. *See Jones v. Courtney*, 466 Fed. Appx. 696, 700 (10th Cir. 2012)("But the KTCA is not a waiver of Eleventh Amendment immunity. We know this because the statute tells us so, see [K.S.A.] 75–6116(g)."). The claims against defendants in their official capacities are redundant of the claims against the State. A suit against a defendant in his or her official capacity is in reality "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690, n. 55 (1978)).

A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office and is "no different from a suit against the State itself." *Will*, 491 U.S. at 71. The state law claims against the state and its departments, boards, and officers, along with the defendants named in their official capacity, are barred.

**D.      Plaintiff's state law claims are barred by absolute immunity.**

Bar officials charged with attorney discipline are entitled to absolute prosecutorial immunity. *Stein v. Disciplinary Bd. of Sup. Ct. of NM*, 520 F.3d 1183, 1194 (10th Cir. 2008). This absolute immunity covers acts of disciplinary officials in the role of advocate for the State, including the initiation of proceedings and litigation of such proceedings. *Id.*, 520 F.3d at 1194. Further, under Kansas law, all participants in disciplinary proceedings are entitled to absolute immunity from liability. *Jarvis v. Drake*, 250 Kan. 645, 830 P.2d 23 (1992) (immunity in attorney disciplinary proceeding is absolute and precludes suit) (applying S.C.R. 223, now S.C.R. 238). Whether viewed as judicial immunity under K.S.A. 75-6104(a)(2), or a claim "barred by any other law" under K.S.A. 75-6104(a)(9), Plaintiff's state law claims are barred by absolute immunity. See S.C.R. 238; *see also Jarvis*, 250 Kan. at 647 (noting earlier language in S.C.R. 223 provide: "All participants shall be entitled to judicial immunity and all rights, privileges and immunities afforded public officials and other participants in actions filed in the courts of this state."). S.C.R. 238 says:

> RULE 238. ABSOLUTE IMMUNITY
> (a) Complainant or Witness. A person is absolutely immune from liability for making an initial complaint or a report or giving testimony in an investigation or board proceeding under these rules.
> (b) Protected Individuals and Entities. The following individuals and entities are absolutely immune from liability for an act within the scope of their duties under these rules:
>> (1) the Supreme Court; (2) the Board; (3) the disciplinary administrator; (4) a Board member; (5) a review committee member; (6) a hearing panel member; (7) an attorney assigned to investigate a docketed complaint under Rule 209; (8) an attorney supervising a respondent on diversion under Rule

212 or on probation under Rule 227; (9) counsel appointed to protect client interests under Rule 235; and (10) any staff member or other person acting on behalf of an individual or entity listed in this subsection.

Supreme Court Rule 238. "The immunity granted in Supreme Court Rule 223 [the predecessor to S.C.R. 238] in an attorney disciplinary proceeding is absolute and precludes a civil action by an attorney[.]" *Jarvis*, 250 Kan. 645, Syl. ¶ 1. *See also Jarvis v. Stubbs*, No. 14-4096-JAR-GLR, 2015 WL 505622, at *7–8 (D. Kan. Feb. 6, 2015) (dismissing claim based upon the filing of complaint against attorney with the Kansas Disciplinary Administrator) (citing *Jarvis*, 250 Kan. 645). Thus, all state law claims regarding Huffman's discipline should be dismissed.

### E.    The public duty doctrine bars Plaintiffs' claim—any duties owed by defendants were public duties and not a duty owed to plaintiff as necessary to state a prima facie claim for negligence.

Dismissal is appropriate in this case because no duty was owed to Plaintiff by any Defendant; the duties of government officers and officials are owed the public as a whole, not to individuals. *Commercial Union Ins. Co. v. City of Wichita*, 217 Kan. 44, 53, 536 P.2d 54, 63 (1975). The public duty doctrine expresses a general rule governmental "duties are owed to the public at large and not to any specific person." *Conner v. Janes*, 267 Kan. 427, 429, 981 P.2d 1169 (1999). "If there is no duty, there can be no claim of negligence." *Id*. There was no duty owed by any defendant to Plaintiff Huffman. Thus, all negligence claims must be dismissed.

### F.    Any negligence claim is barred by discretionary function immunity, K.S.A. 75-6104(a)(5).

*Schreiner v. Hodge*, affirms application of discretionary function immunity under the KTCA. 315 Kan. at 43. The investigatory methods and procedures employed by governmental employees when deciding whether and when to investigate someone are matters requiring the exercise of judgment and discretion. *Id*., at 40. Defendants are immune from liability for the discretion employed in application of the rules related to the discipline of attorneys.

**G.** **The claims for fraud and/or misrepresentation, fraud, constructive fraud, and/or fraud by silence must be dismissed.**

Common to any claim of fraud or negligent misrepresentation are the elements of (a) false representation by defendant of an existing material fact and (b) reasonable reliance by the plaintiff on the false representation. *See Alires v. McGehee*, 277 Kan. 398, 403, 85 P.3d 1191 (2004); *Stechschulte v. Jennings*, 297 Kan. 2, 19, 298 P.3d 1083 (2013). Liability for negligent misrepresentation requires that a plaintiff prove, inter alia, (1) the supply of the false information and (2) the plaintiff's reasonable reliance on that false information. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 937, 305 P.3d 622 (2013). Fraud by silence and fraudulent concealment by failing to communicate material facts are different names for the same cause of action. *Larson v. Safeguard Props., Inc.*, 379 F. Supp. 2d 1149, 1152 (D. Kan. 2005). The elements for a cause of action for fraudulent concealment also include, (1) the withholding of material facts where there was an obligation to disclose them and (2) reasonable reliance by the plaintiff. *Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 978 P.2d 922, 932, 267 Kan. 245 (1999). Constructive fraud is defined as the breach of a legal or equitable duty which the law declares fraudulent because of its tendency to deceive others or violate a confidence. *Schuck v. Rural Telephone Service Co.*, 286 Kan. 19, 26, 180 P.3d 571 (2008). Two elements must also be proven in order to establish constructive fraud: (1) a confidential relationship, and (2) a betrayal of this confidence or a breach of a duty imposed by the relationship. *Id.*

The 1AC supplies only conclusory allegations of "misrepresentation," Doc. 23, ¶¶ 94, 118, fn. 13, and it does not identify any false statement upon which Plaintiff Huffman relied (reasonably or unreasonably). The 1AC does not identify any information or material fact that any defendant was under an obligation to communicate with the Plaintiff. The 1AC further establishes that Plaintiff was in adversarial relationship with all individual defendants and, thus, there was no

confidential relationship, let alone a betrayal of any confidence imposed by the relationship. The 1AC fails to state a claim for fraud, negligent misrepresentation, constructive fraud, and/or fraud by silence upon which relief may be granted.

**H.    The claim for outrage must be dismissed.**

An outrage claim requires four elements: "(1) the conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe." *Burgess v. Perdue*, 239 Kan. 473, 475, 721 P.2d 239 (1986). The disfavored claim is permitted for only the most extreme and outrageous of conduct. *Rupp v. Purolator Courier Corp.*, 45 F.3d 440 (10th Cir. 1994). Plaintiff's claims fail both the extreme and outrageous prongs of the test. *Valadez v. Emmis Commc'ns*, 290 Kan. 472, 476, 229 P.3d 389 (2010). Plaintiff fails to allege extreme and outrageous conduct. Further, conduct that would otherwise be extreme and outrageous may be privileged or legitimate under the circumstances. *Id.*, at 477. "The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Id*. (quoting Restatement (Second) of Torts § 46, comment g (1976)).

**I.    The malicious prosecution claim must be dismissed.**

The claim for malicious prosecution is wrapped around Plaintiffs disciplinary proceedings concluding with Plaintiff being placed in a disability status. Plaintiff concedes the disability status is accurate. The claim is barred for a number of reasons. First is Eleventh Amendment immunity, see *supra § 6.A.1*; second is the absolute immunity afforded by prosecutorial immunity, see *supra § 6.A.2*; third, the absolute immunity afforded by S.C.R. 238, see *Id.*; fourth is the fact that Plaintiff's 1AC concedes probable cause, and fifth are the principles from *Heck v. Humphrey*.

For a claim of malicious prosecution the plaintiff must prove the defendant in so doing acted without probable cause and that the proceeding terminated in favor of the plaintiff. *Nelson v. Miller*, 227 Kan. 271, 276, 607 P.2d 438, 443 (1980). The 1AC shows probable cause and that the proceeding did not terminate in favor of Plaintiff. Plaintiff was disabled, which provides a basis to initiate "involuntary" transfer of law license disability status. Further, the proceeding ended the same. Thus, Plaintiff does not state a prima facie claim for malicious prosecution.

Further, principles of *Heck v. Humphrey* bar the claim where the action on her license has not been vacated or reversed. 512 U.S. 477, 484–487 (1994). These principles apply here where any claim of a *lack* of probable cause would necessarily imply invalidity of the conclusion of the proceedings before the Kansas Supreme Court. Plaintiff fails to state a claim for malicious prosecution upon which relief may be granted.

### Conclusion

Huffman cannot attain relief for a variety of reasons. Her continuous attempts to relitigate stale issues are the foundation for her current suspension.[13] She fails to cure the deficiencies contained in the initial Complaint, therefore, the 1AC should be dismissed with prejudice.

Respectfully submitted,

/s/ Terelle A. Mock
Terelle A. Mock                    #21465
Crystal B. Moe                     #29168
FISHER, PATTERSON, SAYLER & SMITH, LLP
3550 S.W. 5th Street
Topeka, KS 66606
(785) 232-7761 | (785) 232-6604 – fax
tmock@fpsslaw.com | cmoe@fpsslaw.com
**Attorneys for Defendants**

---

[13] *See In re Huffman*, 315 Kan. 641, 509 P.3d 1253 (2022), noting the "filing multiple lawsuits containing frivolous claims, … and serially relitigating settled issues."

## Certificate of Service

I hereby certify that on August 21, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Donna L. Huffman
122 Vista View Ct.
Ozawkie, KS 66070
donna@thetruthmatters.online
***Pro se*** **Plaintiff**

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: No one.

s/Terelle A. Mock
Terelle A. Mock