**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| **DONNA HUFFMAN,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:25-cv-02088-HLT-TJJ** |
| **THE STATE OF KANSAS, et al.,** | |
| **Defendants.** | |

**MEMORANDUM AND ORDER**

Plaintiff Donna Huffman brings this action pro se[1] to challenge her treatment by the Kansas

Supreme Court, the Office of Disciplinary Administrator, and various other actors over the past

twenty-plus years. Plaintiff is a law school graduate whose license to practice law was suspended.

She now is on disabled status. She has many complaints. The contours of her complaints are

difficult to discern. Plaintiff recounts allegations of child abuse that she reported in 2002. She

discusses at length the investigation into her character and fitness review in 2007-2009 before she

was allowed to sit for the bar exam. She refers to unsuccessful claims she filed as an attorney

between 2010 and 2014 and sanctions imposed against her related to those claims. And she

attempts to resurrect all this stale conduct by alleging that it culminated with disciplinary action

being taken against her in 2022.

Defendants move to dismiss Plaintiff's case. Doc. 27. The Court agrees that there are

several grounds for dismissal under Rule 12(b)(1), 12(b)(5), and 12(b)(6). Specifically, Plaintiff

---

[1] Plaintiff is a former practicing Kansas attorney who is now on disabled status. The Court liberally construes Plaintiff's pro se filings and holds them to a less stringent standard than those drafted by lawyers authorized to practice law. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Landrith v. Kan. Atty. Gen.*, 2012 WL 5398004, at *2 (D. Kan. 2012) (holding the complaint of a disbarred attorney to a less stringent standard). But the Court does not assume the role of advocate. *Hall*, 935 F.2d at 1110.

fails to establish subject matter jurisdiction over most, if not all, federal claims because of sovereign immunity and the *Rooker-Feldman* doctrine.[2] Even if the Court had subject matter jurisdiction over her federal claims, Plaintiff has not shown service for certain defendants. The Court dismisses these claims without prejudice. To the extent any federal claims remain (or to the extent the appellate court disagrees with these rulings), the Court dismisses these federal claims with prejudice for failure to overcome qualified immunity and for failing to satisfy Rule 8(a).

As noted, the Court focuses the substance of its opinion on the federal claims. The Court has elected not to analyze the state-law claims because of the difficulty of reviewing Plaintiff's amended complaint. It is possible (indeed likely) that some or all of Plaintiff's state-law claims are subject to dismissal on the same basis as the federal claims. But the Court does not analyze them separately because it declines supplemental jurisdiction over them in the absence of federal claims. The Court offers no opinion on the state-law claims and dismisses them without prejudice.

At the outset, the Court realizes that Plaintiff is frustrated with the disciplinary system in Kansas and has been accumulating perceived grievances and instances of mistreatment for many years. She probably would prefer to try again in this case instead of facing the decision whether to try to seek relief via another avenue. Her disability has undoubtedly complicated the litigation process for her and will continue to do so. The Court empathizes. But the Court cannot ignore legitimate barriers to Plaintiff's claims or create a cause of action for Plaintiff where one does not exist. And there is simply no reasonable likelihood that another amended complaint would be able to proceed in federal court. There are far too many jurisdictional and dispositive problems to overcome as outlined below.

---

[2]   *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

## I.    BACKGROUND

The Court has spent considerable time reviewing Plaintiff's amended complaint to ascertain what this case is about. The following high-level summary is the Court's best attempt to identify who is involved, the claims against them, and a rough timeline of events.

### A.    The Named Defendants.

Plaintiff's amended complaint does not specify who the defendants are, but Plaintiff appears to still bring claims against all originally named Defendants. These parties are:

- State of Kansas;

- Kansas Supreme Court;

- Kansas Office of Judicial Administration (OJA);

- Kansas Office of the Disciplinary Administrator (ODA);

- Kansas Board for Discipline of Attorneys;

- Kansas Department for Children and Families (DCF), formerly known as Kansas Department of Social and Rehabilitation Services (SRS);

- Kansas Office of Administrative Hearings (OAH);

- Gayle Larkin, Kansas Disciplinary Administrator, in her personal and official capacities;

- Stanton Hazlett,[3] former Disciplinary Administrator, in his personal and individual capacities;

- Matthew Boddington, former attorney with DCF, in his personal and individual capacities;

- Robert Hecht,[4] former Disciplinary Administrator Investigator, in his personal and official capacities;

- Justice Marla Luckert,[5] former Kansas Supreme Court Justice, in her official capacity; and

- Unknown and Related Officials and Employees for the State of Kansas.

---

[3]    Hazlett retired from the ODA in 2021. Doc. 27 at 7 n.6.

[4]    Hecht died on August 21, 2025. Doc. 28.

[5]    Plaintiff sued Justice Luckert as the Chief Justice. Justice Luckert has since stepped down as Chief Justice and retired on March 28, 2026.

### B.   Plaintiff's Claims.

Plaintiff's claims are challenging to discern. She seeks injunctive relief[6] and damages in excess of $75,000, including up to $20,000 for each "act and practice." These are her claims, as denoted by counts in the amended complaint:

- Count 1: Civil Rights Violations

  o First Amendment

    - "Defendants" had a pattern and practice of retaliating against Plaintiff for seeking redress.

    - ODA, SRS, Hecht, Boddington, and Hazlett engaged in a pattern and practice of retaliating against Plaintiff for her protected parenting choices. Plaintiff also mentions Larkin in relation to this allegation.

  o Fourteenth Amendment Due Process

---

[6]   Plaintiff's request for prospective injunctive relief serves as an example of why the Court has struggled to understand Plaintiff's amended complaint. She asks the Court to craft prospective injunctive relief:

> relating to due process and compliance with the laws; for example process, procedure, disability accommodations, equal access to the state courts for pro se who are subject to reduced deadlines for filing restrictions in page and form (no email or electronic despite non-party individuals having access), access to open records, accurate records with no tampering and record integrity, protection from retaliation, lawful parenting and life choices not being a target for the bar, investigation standards including clear procedures, the ability to maintain innocence without the punishment of being denied probation by not making a plan prior to trial, and strict times to act rather than hold individual in limbo (time and manner), equal application of procedures and "deals," availability for access to the Attorney Assistance Program for all disabilities or impairments rather than preferred persons or preferred drug issues, ADA compliance with more clear procedures for accommodations for access to state courts and specifically those administrative decisions by the disability coordinator, other as available under these facts applying the law to these facts for reasonable time and manner standards. Provide access to the review committee prior to docketing complaints as unequal despite a "right" to seek review the respondents have no access and OAD conceal the identity of the panel. Prohibiting rules that are more restrictive than the legislature or in conflict with statutes. Instituting compliance with recent Supreme Court cases such as a *Loper* rule to obtain independence, Expressly the injunctive relief of the attorney discipline system being subject to the Kansas legislature process under the Kansas Judicial Review Act.

Doc. 23 at 2-3.

- ▪ ODA, OAH, SRS, and the Kansas Judicial Branch violated Plaintiff's substantive due process rights.[7]

- ▪ The Kansas Supreme Court through the ODA has systemic policies that violate due process, such as hiding documents and giving Plaintiff no procedure to obtain subpoenas. OAH failed to honestly respond to Open Records requests and destroyed portions of the record and then created a new record to help SRS manipulate legal proceedings to retaliate against Plaintiff.

  o Equal Protection

  - ▪ Plaintiff does not specify who this claim is against, but discusses how judicial discipline is treated differently from attorney discipline. She also contends that the "Office" ignored complaints against some attorneys, citing Boddington, Hecht, and others as examples. And she claims that unspecified parties showed preference for certain groups of attorneys.

- Count 2: Violations of the Kansas Consumer Protection Act (KCPA) against "Defendant government" as a supplier. Plaintiff alleges that multiple actions by Larkin constituted deceptive acts and practices.

- Count 3: Torts

  o Negligence, Negligence Per Se, Negligent or Intentional Misrepresentation, Constructive Fraud, and Fraud by Silence against "Defendants," specifically mentioning ODA and Larkin.

  o Outrage against "Defendants," specifically mentioning Larkin.

  o Malicious Prosecution against "Defendants," Larkin, and ODA.

- Count 4: Equal Protection and Access to Justice – Disparate Treatment for Pro Se against the Kansas Supreme Court. Plaintiff alleges that the Kansas Supreme Court has various barriers to equal access by pro se litigants.

- Count 5: Restitution Theory. Plaintiff simply alleges, "The above and subsequent give rise to a claim for Restitution."

---

[7] Plaintiff primarily discusses procedural infirmities in this part of her amended complaint, despite the "substantive" label.

Plaintiff also discusses a purported claim under the Americans with Disabilities Act (ADA), although she does not identify it in a separately numbered count. She alleges "Kansas" has violated the ADA by failing to provide her reasonable accommodation.

### C.    Timeline.

Below is a summarized timeline of the key events and actions Plaintiff alleges, as supplemented for context by the Kansas Supreme Court opinion suspending her law license, *In the Matter of Donna L. Huffman*, 509 P.3d 1253 (Kan. 2022).

- 2002: Plaintiff reported child abuse of her daughter at the hands of Chris Huffman, who was the KDOT assistant bureau chief. Hecht was a prosecutor who failed to protect Plaintiff's daughter from abuse.

- 2007: Boddington initiated a character and fitness complaint about Plaintiff on SRS letterhead. Plaintiff was denied sitting for the July 2007 bar exam in retaliation for various actions related to a protection for abuse matter. It is unclear, but the Court presumes it is the matter arising in 2002.

- 2010: Plaintiff was admitted to practice law in Kansas.

- 2012: Boddington filed a complaint with the ODA about Plaintiff. Plaintiff refers to this as a "re-run attack" or the "2012 SLAPP," which was an attempt to circumvent rulings that SRS had already lost. Hazlett chose Hecht as the investigator. Plaintiff criticizes ODA's record-keeping system and the completeness of the record ODA provided to the Kansas Supreme Court. Plaintiff also alleges that ODA and OAH tampered with and hid documents at undisclosed times. Plaintiff was denied the opportunity to make a statement during the investigation and was retaliated against for not "consenting to the power of Hazlett, Hecht, and the ODA." The investigation and charges of misconduct involved various procedural irregularities. And Larkin drafted the hearing panel report and omitted multiple important contentions and facts favorable to Plaintiff.

- May 22, 2022: Larkin and ODA learned that Plaintiff had sued Larkin, and afterward initiated an involuntary transfer of Plaintiff's law license to disabled status, knowing that the transfer to disabled status was voluntary.

- May 27, 2022: The Kansas Supreme Court suspended Plaintiff's Kansas law license for two years. The Kansas Supreme Court opinion does not refer to Plaintiff's child abuse allegations. The opinion centers on unrelated litigation involving homeowners and the mortgage on their residence.

6

- June 2023 and after: Larkin "continued her active pursuit intending to destroy Plaintiff," causing Plaintiff to experience medical emergencies.

- July 2024: Plaintiff alleges she was the "prevailing party" on the issue of having her license transferred to disabled status voluntarily instead of involuntarily.

## II.    ANALYSIS

There are multiple problems with Plaintiff's amended complaint. There are many that the Court need not reach. The issues that the Court addresses below are dispositive. The Court declines to address other issues because doing so runs the risk of producing bad law based on incomplete or inadequate briefing.

The Court addresses the reasons for dismissal in the order that it must, beginning with subject matter jurisdiction.[8] But the Court's analysis of Rule 12(b)(1) and 12(b)(5) matters is frustrated by the pleading problems the Court identifies in its Rule 12(b)(6) discussion of Plaintiff's Rule 8 problems.

### A.    Rule 12(b)(1) Matters.

The Court first addresses Eleventh Amendment immunity and the *Rooker-Feldman* doctrine, as these impact the Court's subject matter jurisdiction. Motions to dismiss for lack of jurisdiction under Rule 12(b)(1) can generally take two forms: a facial attack or a factual attack. "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green. Co. v. United States*, 531 U.S. 425 (2001). In that situation, the allegations in the complaint are accepted as true. *Id.* Defendants have not submitted any evidence unrelated to service, so the Court considers their 12(b)(1) challenge a facial attack.

---

[8]    The Court uses the term "must" generally, without intending to imply that there is never an exception. There are, of course, times when another order of resolution is permissible. *See, e.g.*, *Loudermill v. Hoskins*, 2024 WL 4533528, at *3 (D. Kan. 2024).

The burden is on Plaintiff, who asserts this Court's jurisdiction, to establish subject matter jurisdiction. *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999) (citation omitted).

### 1.    Eleventh Amendment Immunity.

The Eleventh Amendment to the U.S. Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." The Eleventh Amendment thus bars any claim for damages against a state in federal court unless the state has consented to suit or Congress has allowed the suit. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). "This bar remains in effect when State officials are sued for damages in their official capacity." *Id.*; *see also Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019).[9] Here, Kansas has not consented to suit, and § 1983 does not abrogate Kansas's sovereign immunity. *See Allen v. Knowlton*, 2023 WL 3496237, at *2 (D. Kan. 2023).[10, 11]

Plaintiff's claims against the state of Kansas and its agencies are barred by the Eleventh Amendment. She alleges that state officials and employees violated her constitutional rights. She attacks the processes and procedures used before, during, and after her law license was suspended. Plaintiff's claims implicate a special interest of Kansas as a sovereign: its authority to regulate

---

[9]    Plaintiff sues Hazlett, Boddington, Hecht, and Larkin in both their official and individual capacities. She sues Justice Luckert only in her official capacity. Any claims against state officials in their official capacity are in reality only an alternative way of pleading a claim against the entity of which the officer is an agent. *Kentucky*, 473 U.S. at 165-66. The official-capacity claims for damages against Hazlett, Boddington, Hecht, Luckert, and Larkin are duplicative of the claims against their current or former employers, and the Court also dismisses them as such. Plaintiff failed to challenge this argument in her brief and waives the right to do so.

[10]    The Court assumes Plaintiff brings her constitutional claims under § 1983. But the section of her amended complaint addressing § 1983 is positioned under Count 2, for KCPA violations, not Count 1, for constitutional violations.

[11]    Plaintiff alleges that Defendants waived Eleventh Amendment immunity under the Spending Clause. This argument is unsupported. She also argues in her brief that Defendants have waived their Eleventh Amendment immunity under the Rehabilitation Act. But she has not pleaded a claim under the Rehabilitation Act.

disciplinary proceedings. The Kansas Supreme Court has jurisdiction over Kansas disciplinary proceedings. *Matter of Morton*, 538 P.3d 1073, 1086 (Kan. 2023). All Plaintiff's allegations against Kansas, its agencies, and its agents in their official capacity fall squarely within the bounds of Eleventh Amendment immunity. This Court is without authority to award damages for the state officials' alleged actions in this case.[12]

### 2. *Rooker-Feldman* Doctrine.

The Court's jurisdiction is also limited by the *Rooker-Feldman* doctrine. This doctrine is a rule of abstention that bars a losing party in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) (internal quotation marks and citation omitted). *Rooker-Feldman* applies to claims inextricably intertwined with the state court's judgment. *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1075 (10th Cir. 2004). Stated differently, "if favorable resolution of a claim would upset a judgment, the claim is *Rooker*-barred if it is 'inextricably intertwined' with the judgment, even if the underlying issue was not raised or addressed in the state court that handed down the judgment." *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1140 (10th Cir. 2006). "*Rooker-Feldman* bars a federal claim, whether or not raised in state court, that

---

[12] The *Ex Parte Young* exception to Eleventh Immunity does not save Plaintiff's requests for prospective injunctive relief against the individual defendants in their official capacity. 209 U.S. 123 (1908). First, Plaintiff requests prospective injunctive relief but does not allege ongoing violations of law. The allegations in her complaint discuss at length her past treatment. But they do not identify continuing actions. Second, Hazlett retired and Hecht is deceased. It also appears that Boddington is no longer a state employee (Plaintiff does not allege this, but she also does not assert Defendants are incorrect in their representation). These parties are no longer in a position to implement any prospective injunctive relief. *See West v. (LNU)*, 2025 WL 2106806, at *10 (D. Kan. 2025) (citing cases). Luckert is not specifically named anywhere in the amended complaint, is no longer Chief Justice, and retired on March 28, 2026. And, as noted, Plaintiff's claims implicate a special sovereignty interest. *Ex Parte Young* does not apply to claims implicating special sovereignty interests. *Elephant Butte Irr. Dist. of New Mexico v. Dep't of Interior*, 160 F.3d 602, 609 (10th Cir. 1998) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997)).

asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment." *Id.* at 1141 (citation and internal quotation marks omitted). But *Rooker-Feldman* does not bar a claim that does not rest on an allegation about the state-court proceedings; a claim that would be identical even without a state-court judgment is outside the doctrine's reach. *Id.* at 1145. *Rooker-Feldman* can apply to claims regardless of the type of relief sought.

Plaintiff insists that she does not seek reversal of a state-court judgment or reinstatement. Docs. 23 at 2; 34 at 2, 3, & 7. Plaintiff asserts instead to be a repeat state-court winner. Doc. 34 at 8. And she contends that she makes a general challenge to state bar rules that do not require review of a final judgment in her particular case.

Plaintiff's effort to shift her case out of the realm of *Rooker-Feldman* is insincere and unavailing. Plaintiff's amended complaint is saturated with allegations that various actors colluded and conspired to deprive her of her rights. She complains at length about the times when she was not allowed to sit for the bar exam and when her law license was suspended. She challenges procedures and decisions associated with those events. And she seeks money damages for her own injury. But Kansas provides Plaintiff with a procedure for challenging her suspension. Kansas Supreme Court Rule 228(k) provides that a disciplined attorney may file a motion for rehearing or for modification within twenty-one days after the Supreme Court files an order or opinion imposing discipline. That is the appropriate avenue for Plaintiff's challenges, not federal court.

Plaintiff challenges issues that are "inextricably intertwined with a prior state-court judgment." *See Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (citation omitted). She seeks what would essentially be an overhaul of the Kansas disciplinary process. *See* Doc. 23 at 2-3. She asks this Court to instruct the Kansas Supreme Court how to perform its own functions. *See*

*Ziahkovich v. Members of Colo. Supreme Ct.*, 2021 WL 4047000, at *3 (10th Cir. 2021). This is improper:

> We have upheld the dismissal under *Rooker-Feldman* of a disciplined attorney's constitutional claims seeking declaratory and injunctive relief against the state supreme court and disciplinary administrator. As the Seventh Circuit observed, "the *Rooker-Feldman* doctrine eliminates most avenues of attack on attorney discipline." That includes challenges to the process leading to the disciplinary decision. *Feldman* itself held that constitutional challenges to the rules used to license or discipline attorneys may be raised under § 1983 if they are separable from the decision in an individual licensing or disciplinary case. Thus, the exclusive avenue for federal-court review of a state disciplinary decision is a petition to the United States Supreme Court.

*Id.* (internal citations omitted). There is simply no way to cleanly excise Plaintiff's requests for relief from the decision to suspend her law license. The decisions in Plaintiff's case are not separable from her challenge to the state's disciplinary procedures. The matters are inextricably intertwined and Plaintiff's claims are thus barred by the *Rooker-Feldman* doctrine. This is a jurisdictional infirmity.[13]

## B.     Rule 12(b)(5) Matters.

The next problem is a technical one. It also highlights the chaotic nature of this case. Defendants who are sued in their individual capacity (Hazlett, Boddington, Hecht, and Larkin) assert that Plaintiff did not properly serve them. Plaintiff served all defendants by issuing summons to the Kansas Attorney General's office. Hazlett, Boddington, and Hecht contend that Plaintiff did

---

[13] Defendants also contend that the Court should abstain from hearing this case under the *Younger* abstention doctrine. *Younger* applies to ongoing state-court proceedings, including administrative proceedings. Defendants contend Plaintiff pleads that her disciplinary case is ongoing in part because she "accuses the defendants of 'holding her license to practice law hostage.'" Doc. 58 at 5. The Kansas Supreme Court issued a decision suspending Plaintiff's license. Plaintiff has since been placed on voluntary disabled status. And Plaintiff's amended complaint does not indicate that an administrative proceeding is ongoing. If it were, Plaintiff's federal challenge would likely be barred. But under the facts pleaded, the Court cannot determine that *Younger* applies.

not serve them at their home address and did not show that she tried to do so before serving them at their former business address. Larkin admits receipt of a complaint at her home address.

A plaintiff bears the burden to establish proper service once a defendant challenges service of process. *See Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012). Fed. R. Civ. P. 4 allows service on individuals by following state law in the state of the district court or where service is made. Kansas law allows a plaintiff to serve an individual at a business address if the plaintiff first attempts service at the individual's dwelling house and meets other requirements. K.S.A. § 60-304; *Wanjiku v. Johnson Cnty.*, 173 F. Supp. 3d 1217, 1229 (D. Kan. 2016). And if the plaintiff uses return receipt delivery, she must properly evidence such delivery. K.S.A. § 60-303(c)(1), (c)(4).

Plaintiff tried to avoid dismissal on the service issue by belatedly filing sixteen separate returns of service including copies of summons purportedly sent to the individual defendants' residential addresses, a general postage receipt, and USPS tracking records for two items. But her efforts are insufficient.

First, for Hazlett, Boddington, and Hecht, these documents do not show that she served them (or even unsuccessfully tried to serve them) at their residences. Second, for Larkin, who admits receiving an envelope at her home, Plaintiff submits a photo of the documents purportedly included in the envelope. But she still did not file a proper return of service for Larkin that contains all the elements required by K.S.A. § 60-303(c)(4). Doc. 39.

Plaintiff fails to meet her burden to show she properly served Hazlett, Boddington, and Hecht in their personal capacities. *See Okla. Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) ("Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served.") (citations omitted); *see also Rivera v. Riley Cnty. Law Bd.*, 2011 WL 4686554, at *2

(D. Kan. 2011). Larkin is a closer call. But Plaintiff's evidence of service on Larkin technically is insufficient. And given the numerous other problems with Plaintiff's amended complaint, the Court fails to see a reasonable probability that Plaintiff would correct the service problems given another opportunity.

The Court independently dismisses the case against Hazlett, Boddington, Hecht, and Larkin in their individual capacity based on insufficient service. Defendants raised this issue in their first motion to dismiss. Doc. 15. But Plaintiff did not even file the returns of service until after Defendants moved a second time. The returns, moreover, do not fix the problems identified by Defendants. And it is highly unlikely that Plaintiff would correct the deficiencies if given yet another chance.[14] Lack of service provides another basis for dismissal against the individual defendants. The individual defendants are dismissed without prejudice.

### C.    Rule 12(b)(6) Matters.

The third category of problems with Plaintiff's amended complaint falls under Rule 12(b)(6). The Court addresses Rule 8 requirements and qualified immunity under Rule 12(b)(6).

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it contains sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement

---

[14]   There also may be an issue of timeliness with another attempt, but the Court does not reach that issue.

to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). A court undertaking this analysis accepts as true all well-pleaded allegations in the complaint but need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

### 1. Rule 8(a)'s Short and Plain Statement Requirement.

Federal complaints are subject to Rule 8, and a court may dismiss a noncompliant complaint under Rule 12(b)(6). 5C Fed. Prac. & Proc. Civ. § 1363 (3d ed.) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2)."). Rule 8 requires that pleadings contain "a short and plain statement" of the claims, along with allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The purpose of Rule 8 is to give a defendant fair notice of the claims against it. *Schupper v. Edie*, 193 F. App'x 744, 745-46 (10th Cir. 2006). A pleading should not be so lengthy or complex that it places an undue burden on a responding party. *See D.M. by & through Morgan v. Wesley Med. Ctr. LLC*, 2018 WL 4222382, at *3 (D. Kan. 2018). Failure to provide a short and plain statement that complies with Rule 8 is sufficient grounds to dismiss a complaint. *Mann v. Boatright*, 477 F.3d 1140, 1147-48 (10th Cir. 2007). This is a matter within the district court's discretion. *Schupper*, 193 F. App'x at 745.

Plaintiff's amended complaint is disorganized, long, and unnecessarily complicated. It contains 149 paragraphs spanning 38 pages. There are more than 50 footnotes, some of which are misnumbered and misplaced.[15] The allegations span more than twenty years. Plaintiff repeatedly refers to "Defendants" in the collective, without identifying specifically who each claim is

---

[15] There are many duplicates; the Court counts two footnotes each numbered 1, 4, 5, 6, and 8. There are six duplicate footnotes numbered 51. There is one footnote numbered 7, but it's placed within the 51s. And these footnote numbers appear to be missing altogether: 12, 19, 34, 40, 42, and 46.

against.[16] Legally distinct claims are conflated into single counts. And the Court struggles to construct a timeline of events because the amended complaint contains relatively few dates. In short, the amended complaint does not comply with Rule 8. If the Court has jurisdiction or is otherwise wrong in its prior analysis, the Court dismisses all federal claims with prejudice for failure to comply with Rule 8.

There are times when an explanation of the parties' history and past interactions may be helpful to understand the context of claims based on concrete actions by specific actors. But it seems that the majority of Plaintiff's amended complaint relates to the parties' history and not to her present claims. The Court has done its best to discern Plaintiff's claims. But it is not the job of the Court to sift through a pleading to try to construct a plaintiff's claims. *Id.* at 746; *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) ("Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges."); *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."). Further, unnecessary "[p]rolixity of a complaint undermines the utility of the complaint." *Baker v. City of Loveland*, 686 F. App'x 619, 620 (10th Cir. 2017).

Plaintiff's amended complaint fails to satisfy Rule 8. The Court dismisses it for this reason, independent of any other reasons discussed here. Plaintiff was aware of this issue based on Defendants' initial motion to dismiss. Doc. 15 at 4-6. Plaintiff could have tried to fix the issue. She did not. To the contrary, a redline comparison of her original to amended complaint shows that she added allegations and did little to clarify existing allegations. *See* Doc. 27-4.

---

[16]   There are no allegations at all against Luckert specifically.

15

The Court sets forth a few representative examples of Plaintiff's allegations to demonstrate

why they fail to comply with Rule 8:

45. Plaintiff has been denied large swaths of her life by the unreasonable constant investigation and attacks (both direct and indirect) of the Defendants which intended and did impose substantial burdens by both the system deficiencies and in some cases how it was applied specifically to Plaintiff unequally weighted in favor of the State of Kansas rather than time and act neutral. When by, for example using the same persons driving investigation, prosecution, creating the record, drafting a ruling when not there (Larkin) then prosecuting her written decision, while suppressing evidence in not including the records admitted in the transmittal denying until after, and making up facts in argument.

. . . .

50. ODA used the re-run complainant Boddington to investigate non ethics related aspects of Plaintiffs life. For example when Boddington and Hecht conspired to create evidence when in a purported deposition Hecht inquired to Boddington who was charged with protecting the child and took on the role outside his job of protecting the Assistant Bureau Chief going hostile to the child and child's safety contrary to the mandate of the Agency then they engaged in speculation over Plaintiff's parenting including whether LEH was even functional with Boddington, notably after an off the record break where they conspired to what false testimony would be elicited, falsely testified that LEH had to sit for a psych evaluation tying it to Plaintiff's parenting for advancing protection against abuse. Plaintiff's parenting was not part of the complaint and not anything the ODA, Boddington, or the investigator had a legitimate right to investigate.

. . . .

80. ODA sits controlling power, time, reputation, and the property right of a license which is inherent to the business of being an attorney and ability to earn a living. ODA, OJA, the Kansas Supreme Court and the related defendants in their personal capacities sit not independent but rather as rule maker, rule interpreter, investigator, prosecutor of the vague rules they create and apply to others in an arbitrary fashion, assign members of a tribunal for an "advisory" opinion who all have licenses under control of the same entity, have an unnamed employee of the prosecutor – notably not in the room during the hearing- draft the

16

opinion after the fact and advise the panel, decide what is in the record rather than turn over the entire record to the Court, not have procedures for a true record all being interrelated and essentially the same entity and set of actors, illusory and violative of *Loper*.

Prosecutors and prosecutor's employees advising the panel ex parte after the hearing exceeds any reasonable bounds of an independent procedure and due process.

Doc. 23 at 13, 14, & 23-24 (internal footnotes omitted).

Plaintiff should know and understand her Rule 8 obligations given her background. The amended complaint does not satisfy this rule. It does not contain a short and plain statement of Plaintiff's claims. The allegations are not simple, concise, or direct. And the verbosity and lack of structure have placed an undue burden on Defendants. The Court therefore dismisses the amended complaint under Rule 8.[17, 18] If the Court had subject matter jurisdiction over any federal claim, this dismissal would be with prejudice for the reasons that the Court explains when it evaluates whether to allow Plaintiff to amend again.

### 2.    Qualified Immunity for Individual Defendants.

Defendants raised qualified immunity for Plaintiff's constitutional claims against Hazlett, Boddington, Hecht, and Larkin in their individual capacity. Plaintiff did not address this argument in her response brief, at all. Once raised, Plaintiff bears the burden to identify clearly established law that Defendants violated. She failed to do so (and waived her right to do so by not addressing

---

[17]    The Court briefly addresses Plaintiff's purported ADA claim here. As previously mentioned, she does not denote it as a specific count in the amended complaint. But she does refer to the ADA a few times throughout the document. *See, e.g.*, Doc. 23 at 11 n.26, 30, 31, 31, & 36. She alleges she has a traumatic brain injury. But she does not plead what benefits Defendants denied her because of that injury, what accommodation she sought, or assert it was reasonable. Plaintiff fails to state a claim for relief under the ADA even under a notice pleading standard.

[18]    The Court also suspects there are multiple timeliness issues with Plaintiff's claims. But Defendants do not squarely address this problem until their reply brief, only mentioning the statute of limitations for a conspiracy claim in a footnote in their motion to dismiss. *Compare* Doc. 27 at 14 n.9 to Doc. 58 at 8. There are enough other problems with Plaintiff's amended complaint that the Court does not further address the timeliness of her claims here. But it seems a significant hurdle to overcome given the dates mentioned in Plaintiff's amended complaint.

the argument). But regardless of whether Plaintiff waived the argument, Defendants' argument also appears facially valid and is sufficient to trigger Plaintiff's burden.

Qualified immunity protects public officials from civil liability provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations omitted). Once an official has raised a qualified immunity defense, the plaintiff bears the burden to show that (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the conduct at issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Once a defendant asserts qualified immunity, there is a presumption of immunity. *Estate of Taylor v. Salt Lake City*, 16 F.4th 744, 757 (10th Cir. 2021).

Defendants argue that they did not violate a constitutional right and that any such right was not clearly established. Plaintiff merely responds that Defendants violated the constitution. But again, the generality of her allegations complicates the Court's review of her claims. It is even more important to be specific about actions, actors, and dates when a defendant raises qualified immunity. Personal participation is a key component of both a § 1983 claim and entitlement to qualified immunity. *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013). Plaintiff also does not address what law, if any, put Defendants on notice that their actions violated the constitution. And she certainly does not define clearly established law at a level of particularity needed for defeating qualified immunity. Hazlett, Boddington, Hecht, and Larkin are entitled to qualified immunity for the constitutional claims against them in their individual capacity.

### D.    State-Law Claims.

The Court has not examined the substance of Plaintiff's state-law claims. The Court declines to exercise jurisdiction over them. Plaintiff has not pleaded diversity jurisdiction (and it seems that she could not). The only way the Court maintains jurisdiction over state-law claims is by exercising supplemental jurisdiction over them based on the now-dismissed federal claims. The Court declines to do so.

A court has discretion to exercise supplemental jurisdiction over state-law claims that derive from "a common nucleus of operative fact" as a pending federal claim. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997); *see also* 28 U.S.C. § 1367(a). Courts consider whether the values of judicial economy, convenience, and fairness would be served by asserting supplemental jurisdiction over the state-law claims. *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013). But a district court may decline supplemental jurisdiction when the claims over which it had original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3); *see, e.g.*, *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004); *Heffington v. Derby United Sch. Dist. 260*, 2011 WL 5149257, at *3 (D. Kan. 2011). Courts are cautious about exercising supplemental jurisdiction over state-law claims. Notions of comity and federalism weigh in favor of state courts trying their own lawsuits. *Villalpando ex rel. Villalpando v. Denver Health & Hosp. Auth.*, 65 F. App'x 683, 688 (10th Cir. 2003) (citation omitted). Declining supplemental jurisdiction is a matter within a court's discretion. *See Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1172 (10th Cir. 2009).

19

Plaintiff's state-law claims arise out of the same common nucleus of operative fact as the federal claims.[19] But beyond that fact, there is little reason to maintain jurisdiction. No case management or discovery has occurred in federal court. The case has been stayed pending resolution of the motion to dismiss, so this Court has no vested interest in maintaining jurisdiction. And the state-law claims are better resolved by a state court. Kansas has a legitimate interest in interpreting and applying its own tort laws and principles of liability. It also has an interest in considering disciplinary matters of its own bar. And notions of comity support allowing Kansas courts to address matters of state law. The Court therefore does not reach the merits of the state-law claims and dismisses them without prejudice.

### E.        Request to Amend.

Plaintiff asks for leave to amend to fix any problems identified by the Court. Doc. 34 at 5, 23 n.17. But she did not formally move to file a second amended complaint under Rule 15(a)(2). And she did not comply with D. Kan. Rule 15.1, which requires a concise statement of the amendment sought and a proposed amended pleading. This alone justifies denial.

Bare requests to amend contained in a response brief are not a motion and do not put the issue before the Court. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1282-83 (10th Cir. 2021). The Court does not encourage or condone the practice of taking a "wait-and-see" approach to see what can get by before making fulsome efforts to address the challenged issues. And Plaintiff also used her one-time amendment as of right in response to Defendants' first motion to dismiss. Plaintiff has not shown why she should be allowed to amend again or how she would craft such amendment to address the problems identified within this order. She outlines nothing that gives

---

[19] A "common nucleus" was not easy to ascertain here, as the facts are so lengthy and broad. Nevertheless, the state-law claims are based on the same allegations as the federal claims, so the Court assumes they are based on a common nucleus of operative facts.

the Court confidence that another amendment would result in a favorable outcome for her. To the contrary, offering Plaintiff another chance to plead her claims would only result in additional resources expended by Defendants to respond and delay in the resolution of this case. Any further attempt to amend appears futile.

## III.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' motion to dismiss (Doc. 27) is GRANTED. The Court dismisses the federal claims WITHOUT PREJUDICE. To the extent any federal claims survive or the appellate court disagrees with the Court's analysis on subject matter jurisdiction or service, those federal claims are dismissed WITH PREJUDICE. The Court declines to exercise supplemental jurisdiction over the state-law claims and dismisses them WITHOUT PREJUDICE. The case is closed. Plaintiff has thirty days to appeal.

IT IS SO ORDERED.

Dated: March 31, 2026        /s/ *Holly L. Teeter*  
              HOLLY L. TEETER  
              UNITED STATES DISTRICT JUDGE